■ In the Matter of HARVEY GREENFIELD, Deceased. PUBLIC ADMINISTRATOR OF KINGS COUNTY, Petitioner; ANITA STEIN et al., Respondents; CHARLES H. ROSE II et al., Respondents, et al., Respondents. LOUIS R. ROSENTHAL et al., Nonparty Appellants. [7 NYS3d 513]—

In a proceeding for the administration of the estate of Harvey Greenfield, in which the coadministrators of the estate petitioned to settle their account, nonparty attorneys Louis R. Rosenthal, Michael M. Lippman, and Oshrie Zak jointly appeal, as limited by their brief, from so much of a decree of the Surrogate's Court, Kings County (Lopez Torres, S.), dated September 19, 2012, as fixed the amount of their attorneys' fees in the respective amounts of only $151,250, $53,125.05, and $98,124.95, and directed them to return to the estate all fees paid in excess of such amounts.

Ordered that the decree is modified, on the law, on the facts, and in the exercise of discretion, by deleting from the fourth decretal paragraph thereof the provision "to Louis R. Rosenthal, Esq. in the sum of $151,250.00" and from the fifth decretal paragraph thereof the provision "that Louis R. Rosenthal, Esq. return to this decedent's estate the sum of $453,750.00"; as so modified, the decree is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Surrogate's Court, Nassau County, for a hearing on the issue of the reasonable amount of fees for the legal services rendered by Louis R. Rosenthal to the Public Administrator of Kings County with respect to the administration of the estate of Harvey Greenfield before a different Surrogate, and a new determination on that issue thereafter.

The decedent, who was never married and had no children, died intestate on July 5, 2002, leaving an estate valued at approximately $30 million. The estate was initially administered by the Public Administrator of Kings County (hereinafter the Public Administrator) after the Public Administrator's attorney, the nonparty appellant Louis R. Rosenthal, filed a petition to obtain temporary letters of administration.

After temporary letters of administration were issued to the Public Administrator, Anita Stein and Isabel Friedman (hereinafter together the individual coadministrators), who claimed that they were the decedent's distributees under the laws of intestacy, cross-petitioned to revoke those temporary letters of administration, and to have letters of administration issued to them. Stein was initially represented by the nonparty appel-

lants Michael M. Lippman and Oshrie Zak (hereinafter together Lippman attorneys), and Friedman was represented by attorney Richard S. Naidich. Naidich also represented Barbara Rose and Jerome Finkel (hereinafter collectively, with the individual coadministrators, the distributees), who were maternal first cousins of the decedent.

On October 10, 2002, the parties entered into a stipulation on the record before the Surrogate, pursuant to which the individual coadministrators were to be added as temporary coadministrators of the estate along with the Public Administrator, and Rosenthal's legal fee for representing the Public Administrator was to be limited to 2% of the gross estate. In an order dated January 29, 2003, the Surrogate directed that the fees payable to Rosenthal were to be limited to no more than 2% of the gross estate.

After a kinship hearing, the Surrogate determined that the distributees were the decedent's heirs at law. Accordingly, on August 15, 2006, the temporary letters of administration issued to the Public Administrator were revoked, and full letters of administration were issued to the individual coadministrators.

The Public Administrator filed his account for the period from July 23, 2002, to July 30, 2004, which was then supplemented by the individual coadministrators in September 2011 to include transactions commencing on July 30, 2004, and terminating on August 9, 2011. The account disclosed that Rosenthal, the Lippman attorneys, and Naidich were each paid advance legal fees in the sum of $605,000. Thereafter, a petition was filed to settle the account.

With respect to the fees of their attorneys, the distributees filed a joint affidavit in support of their application to dispense with the requirement that their attorneys submit affidavits of the legal services they provided. The distributees stated that they had agreed that the Lippman attorneys and Naidich would receive 2% of the gross value of the estate, and that Rosenthal would also be entitled to 2%. They advised the Surrogate that they consented to the legal fees, as already paid to their attorneys, and requested that the Surrogate allow the fees without requiring submission or consideration of contemporaneous time records. With respect to Rosenthal, they stated that while they would not necessarily "encourage" the Surrogate to require him to provide an affidavit of the services he rendered, they acknowledged that he was in a different relationship with them than their own counsel. Further, Stein submitted a separate affidavit, in which she stated that she was fully satisfied

with the work done by the Lippman attorneys, and requested that their fee of $605,000 be allowed in full.

In an order dated July 13, 2012, the Surrogate determined that a single counsel fee of $665,000 was appropriate, with Naidich entitled to $362,500, Rosenthal entitled to $151,250, and the Lippman attorneys entitled to $151,250. The Surrogate noted that none of the attorneys submitted contemporaneous time records and that, in reliance on the terms of the October 2002 stipulation, no such records were maintained by the attorneys. Thereafter, the Surrogate, in a decree dated September 19, 2012, determined that Rosenthal and the Lippman attorneys were each entitled to $151,250 in counsel fees, and directed them each to return the amount of $453,750 to the estate as overpayment of counsel fees paid to them. Rosenthal and the Lippman attorneys appeal from so much of the decree as reduced their legal fees and directed them to return funds to the estate.

"The Surrogate's Court bears the ultimate responsibility for deciding what constitutes a reasonable attorney's fee" (*Matter of Goliger*, 58 AD3d 732, 732 [2009]; *see Matter of Harrison*, 119 AD3d 687, 688 [2014]; *Matter of Talbot*, 84 AD3d 967, 967-968 [2011]). "Such determination is a matter within the sound discretion of the court regardless of the existence of a retainer agreement or whether all the interested parties have consented to the amount of fees requested" (*Matter of Harrison*, 119 AD3d at 688; *see Matter of Elenidis*, 120 AD3d 1229, 1231 [2014]; *Matter of Weinberg*, 107 AD3d 729, 730 [2013]). In determining a reasonable attorney's fee, the factors that must be considered included the time and labor, difficulty of the questions involved, the amount involved, counsel's experience, ability and reputation, and the customary fee charged for such services (*see Matter of Sucheron*, 95 AD3d 892, 894 [2012]; *Matter of Thompson*, 66 AD3d 1035, 1036 [2009]; *Matter of Goliger*, 58 AD3d at 732).

Here, the Surrogate's Court improvidently exercised its discretion in reducing the fees awarded to Rosenthal. Rosenthal's failure to keep and submit contemporaneous time records was excusable since he reasonably relied on the terms of the October 2002 stipulation, which specifically addressed his legal fees, and defined them as a percentage of the gross estate. While the Surrogate was not bound by the terms of that stipulation, Rosenthal submitted evidence establishing that he was involved in virtually all aspects of the administration of the estate, which included overseeing the payment of fees owed to the decedent's former law practice, arranging for the transfer of the decedent's law practice to the decedent's associate, set-

tling various claims against the estate, arranging for the preparation and filing of the initial account, and identifying the decedent's lawful distributees. These services provided by Rosenthal to the Public Administrator were similar to those provided by Naidich to Friedman, for which the Surrogate determined that Naidich was entitled to $362,500. Therefore, consideration of the relevant factors does not support the Surrogate's determination with respect to Rosenthal's fees. In light of Rosenthal's prior long tenure as counsel to the Public Administrator of Kings County, we deem it appropriate to remit the matter for a hearing on the issue of the legal fees to which Rosenthal is entitled to the Surrogate's Court, Nassau County, and, thus, before a different Surrogate.

However, the Surrogate's Court did not improvidently exercise its discretion in reducing the legal fees of the Lippman attorneys. The Surrogate correctly rejected their contention that they were entitled to presume that, since the October 2002 stipulation provided that they were entitled to receive the same legal fee as Rosenthal, they were thus excused from maintaining contemporaneous time records as a consequence. Moreover, during the course of the administration of the estate, the Lippman attorneys were discharged by Stein, who then retained Naidich in their place.

The appellants' remaining contentions are improperly raised for the first time on appeal. Rivera, J.P., Hall, Austin and Cohen, JJ., concur.